**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LONG NGUYEN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| ESSENDANT INC., RICHARD D. PHILLIPS, CHARLES K. CROVITZ, DENNIS J. MARTIN, SUSAN J. RILEY, ALEXANDER M. SCHMELKIN, STUART A. TAYLOR, II, PAUL S. WILLIAMS, and ALEX D. ZOGHLIN, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 1:18-cv-01546-MN

JURY TRIAL DEMANDED

CLASS ACTION

## AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Lead Plaintiff Long Nguyen ("Plaintiff"), by the undersigned attorneys, individually and on behalf of all others similarly situated, respectfully brings this direct class action complaint for violations of §§14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against the herein named defendants and alleges the following:

## NATURE OF THE ACTION

1. This is a stockholder class action brought on behalf of the former holders of Essendant Inc. ("Essendant" or the "Company") common stock against Essendant and its Board of Directors (the "Board" or the "Individual Defendants," and, together with Essendant, the "Defendants"). This matter arises out of Defendants' dissemination of a false and misleading solicitation/recommendation statement in connection with the sale of the Company to Staples,

Inc. (together with its affiliates, Egg Parent Inc. and Egg Merger Sub Inc., "Staples") (the "Transaction").

2.      On September 14, 2018, Essendant announced the Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Staples would commence a tender offer ("Tender Offer") to purchase all outstanding shares of Essendant for $12.80 in cash per share of Essendant's common stock (the "Offer Price").  The Tender Offer expired on January 30, 2019 and the Transaction closed the next day.

3.      Approximately five months earlier, however, the Board had agreed to a different change-in-control transaction with a different counterparty.  On April 2, 2018, Essendant had entered into a merger agreement with Genuine Parts Company ("GPC" and the "GPC Merger Agreement") pursuant to which GPC was to spin-off and combine its office supply wholesaling business, S.P. Richards Company ("SPR"), with Essendant (the "GPC Transaction").  The GPC Transaction was poised to create meaningful value for Essendant stockholders by driving more profitable growth and reducing leverage.  Operationally, the combination was expected to provide for increased scale, enhanced service capabilities and expanded product offerings. Financially, Essendant stockholders were to be the beneficiaries of increased cash flow and a stronger, more flexible balance sheet, with more than $100 million in working capital improvements and net cost synergies of $75 million in annual run-rate synergies in the first two years alone.  In fact, the GPC Proxy (defined below) indicated an approximate implied equity value reference range of ***$13.30 to $23.90*** per share for the GPC Transaction, a midpoint of over $10.00 per share above the pre-announcement Essendant price of $8.47 per share.  In short, the GPC Transaction was a great deal for Essendant stockholders.

4.      Unbeknownst to GPC, just days before Essendant executed the GPC Merger

Agreement, the private-equity firm Sycamore Partners (together with its affiliates, "Sycamore"), on behalf of its portfolio company, Staples, called Essendant to express its interest in a potential transaction.  The Board was made aware of and considered the Sycamore inquiry.  GPC was not made aware of this inquiry and Essendant had represented to GPC that it had no interest in any other merger partner other than GPC.

5.     Shortly thereafter, on April 17, 2018, Staples submitted an indication of interest to acquire 100% of the Company's equity for $11.50 per share.  The Board determined the proposal was not reasonably likely to lead to a "Superior Proposal" under the GPC Merger Agreement, yet conveyed to Staples that Essendant would consider a revised offer from Staples, in breach of the no solicitation provision of the GPC Merger Agreement.

6.     On April 29, 2018, Staples sent the Company a letter requesting the Company engage with Staples and indicating that Staples believed it would be able to "identify incremental opportunities which should enable [Staples] to increase [its] all-cash offer significantly in excess of $11.50 per share."  The Board did an about face and determined this second ***nearly identical*** proposal was likely to lead to a Superior Proposal.  It appears the Board was swayed by the potential for increased personal benefits through an all-cash transaction with Staples.

7.     Thereafter, Essendant worked to undermine the GPC Transaction.  In a breach of the GPC Merger Agreement, Essendant failed to employ its reasonable best efforts to consummate the GPC Transaction, including failing to contact its customers and build customer support for the GPC Transaction and delaying both the filing of its registration statement with the SEC and the antitrust approval process despite repeated requests by GPC for Essendant to take these measures.

8.     Despite Essendant's actions, GPC continued to work towards a transaction that

would have benefitted Essendant stockholders, going so far as to sweeten its already superior deal by sending the Company a term sheet on May 7, 2018, proposing a contingent value right ("CVR") to the Company's stockholders that would have a maximum value of $4.00 per share. This proposed CVR was rebuffed by the Company.

9.      On September 8, 2018, Staples' financial advisor indicated to Essendant that it believed Staples would be willing to agree to a $12.80 per share price.

10.     On September 9, 2018, just four days after the Company reassured its stockholders that the Board continued to recommend the GPC Transaction, the Board met and determined the $12.80 per share Staples offer was a "Superior Proposal" under the GPC Merger Agreement.   On September 10, 2018, the Company notified GPC of the revised offer from Staples.   Rather than tilt at windmills, GPC announced it would not be making any counterproposals.

11.     The proposed transaction with Staples received an immediate public rebuke from Essendant's then-largest shareholder Pzena Investment Management LLC ("Pzena").   On September 12, 2018, Pzena issued a statement indicating that Pzena "believes that the proposal from Staples to acquire Essendant at $12.80 a share does not constitute a superior offer to the proposed merger with SP Richards, nor does the offer of $12.80 adequately value the company independent of the SP Richards transaction."[1]

12.     Notably, the Offer Price was well below the implied equity price of the pro-forma combined SPR-Essendant company based on the illustrative discounted cash flow analysis Essendant's financial advisor Citigroup Global Markets Inc. ("Citi") had performed in connection

---

[1] *Pzena Investment Management Opposes Staples's Acquisition of Essendant* (Sept. 12, 2018), available at: https://www.globenewswire.com/news-release/2018/09/12/1570149/0/en/Pzena-Investment-Management-Opposes-Staples-s-Acquisition-of-Essendant.html

with the GPC Transaction ("Pro Forma DCF"), which indicated an approximate implied equity value reference range of *$13.30 to $23.90* per share - **$0.50 to $11.10 above the Offer Price.** GPC Proxy at 88 (defined below).[2]

11.     Nevertheless, on September 13, 2018, the Board officially terminated the GPC Merger Agreement and entered into the Merger Agreement with Staples.

12.     As a result of being cast aside by Essendant, GPC collected a $12 million termination fee under the GPC Merger Agreement and instituted an action in the Delaware Court of Chancery based upon Essendant's deceptive conduct and breaches of its contractual obligations under the GPC Merger Agreement captioned *Genuine Parts Company v. Essendant Inc.*, Case No. 2018-0730 (Del. Ch. Oct. 10, 2018) ("*Genuine Parts*").[3]

13.     Essendant's insiders, including the Company's then-President and Chief Executive Officer ("CEO"), Richard D. Phillips ("Phillips"), had a strong financial interest in abandoning the GPC Transaction in favor of the Merger Agreement with Staples, as they secured significantly higher cash payments than the payments they would have received under the GPC Transaction.  Indeed, Essendant's named executive officers collectively increased their "golden

---

[2] *See* Form 424B3 ("GPC Proxy") filed by Essendant with the SEC on August 8, 2018, available at https://www.sec.gov/Archives/edgar/data/355999/000119312518242790/d569736d424b3.htm
[3] The Verified Complaint in *Genuine Parts* is referred to herein as the "GPC Compl."   In *Genuine Parts*, the Court denied Essendant's motion to dismiss GPC's breach of contract claims, stating "[it was] satisfied GPC has adequately alleged enough in total from which [the Court] can infer that Essendant, at least indirectly, encouraged or facilitated a proposal with respect to a competing transaction," that GPC's "allegation supports a pleading stage inference of breach of Section 7.03(a) [of the GPC Merger Agreement]" and finding "even stronger circumstantial inference of breach aris[ing] from the pled fact that Essendant rejected Sycamore's first proposal only to deem essentially the same offer a Superior Proposal shortly after. . . . allow[ing] a reasonable inference that Essendant's board 'directly or indirectly' shared its preferences or inclinations with Sycamore, thereby encouraging it to resubmit its offer with a slight alteration so the board could 'properly' begin competing negotiations." *Genuine Parts Co. v. Essendant Inc.*, 2019 Del. Ch. LEXIS 991, *23-25 (Del. Ch. Sept. 9, 2019).

parachutes" by **$5.6 million** over the benefits they were entitled to receive in the GPC Transaction.

14.     On September 24, 2018, in order to secure stockholder support for the Transaction, Defendants issued the Solicitation/Recommendation Statement on Schedule 14D-9 (together with all amendments, the "Recommendation Statement"), recommending that Essendant stockholders accept the $12.80 Offer Price and tender their shares into the Tender Offer.

15.     The central question for the Company's stockholders in determining whether to accept Staples' offer and tender their shares into the Tender Offer was whether Staples' $12.80 Offer Price represented fair compensation for the value of their shares and was more favorable from a financial point of view than the GPC Transaction.

16.     The Recommendation Statement was materially misleading as to this issue.

17.     As set forth herein, the Company never adequately justified or explained the Board's decision to deem Staples' $12.80 per share offer a Superior Proposal.  Essendant had consistently touted the benefits of the GPC Transaction up until the execution of the Staples Merger Agreement, and never sufficiently articulated any changes to its anticipated benefits that would support the Transaction being more favorable from a financial point of view than the GPC Transaction.

18.     The Recommendation Statement also conveyed to Essendant stockholders that the Transaction was superior to the GPC Transaction because of regulatory risk specific to the GPC Transaction.

19.     The Recommendation Statement was materially misleading as to this issue as GPC and the Company had already made significant progress towards obtaining regulatory

approval. In fact, nearly four months after agreeing to the GPC Transaction and a mere six weeks before abandoning GPC, Essendant was still assuring its stockholders during its July 27, 2018 second quarter 2018 earnings call, that the GPC Transaction would obtain clearance with the Federal Trade Commission ("FTC").

20.    Additionally, the Recommendation Statement (i) misrepresented or failed to disclose the material factors the Board believed supported its determination to recommend the Transaction, and (ii) was misleading with respect to the process leading to the Transaction by omitting or partially disclosing troubling behavior concerning, among other things, the Board's role in undermining the GPC Transaction and breaching the GPC Merger Agreement in order to enter into their preferred and non-value maximizing transaction with Staples.

21.    These defects in the Recommendation Statement prevented the Company's stockholders from making a fully informed decision on the Tender Offer and Transaction and induced the Company's stockholders into accepting the Offer Price that was unfair compared to the actual intrinsic value of the Company and not more favorable from a financial point of view to the Company's stockholders than the transaction with GPC.

22.    As a consequence, Plaintiff and the Class were injured.

## JURISDICTION AND VENUE

23.    The claims asserted herein arise under §14(e) of the Exchange Act, 15 U.S.C. § 78n(e).

24.    This Court has jurisdiction over this action pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

25.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

26.     Plaintiff was at all times relevant hereto a continuous stockholder of Essendant. Mr. Nguyen was designated Lead Plaintiff in this action by order of this Court dated July 25, 2019 (Dkt. No. 10).

27.     Defendant Essendant was a Delaware corporation and maintained its principal executive offices in Deerfield, Illinois.  Prior to the Transaction, the Company was a leading national distributor of workplace items and provided access to a broad assortment of over 170,000 items, including janitorial and breakroom supplies, technology products, traditional office products, industrial supplies, cut sheet paper products, automotive products and office furniture.

28.     Defendant Phillips served as the President, CEO and a director of Essendant from 2017 through the completion of the Transaction.

29.     Defendant Charles K. Crovitz ("Crovitz") served as Chairman of the Board and a director of the Company from 2005 through the completion of the Transaction.

30.     Defendant Dennis J. Martin ("Martin") served as a director of the Company from 2016 through the completion of the Transaction.

31.     Defendant Susan J. Riley ("Riley") served as a director of the Company from 2012 through the completion of the Transaction.

32.     Defendant Alexander M. Schmelkin ("Schmelkin") served as a director of the Company from 2012 through the completion of the Transaction.

33.     Defendant Stuart A. Taylor, II ("Taylor") served as a director of the Company from 2011 through the completion of the Transaction.

34.     Defendant Paul S. Williams ("Williams") served as a director of the Company

from 2014 through the completion of the Transaction.

35.     Defendant Alex D. Zoghlin ("Zoghlin") served as a director of the Company from 2008 through the completion of the Transaction and previously served as a Company director from November 2000 to May 2006.

36.     The Defendants identified in paragraphs 28 through 35 are collectively referred to herein as the "Individual Defendants" and/or the "Board," and collectively with Essendant, the "Defendants."

## OTHER RELEVANT ENTITIES

37.     GPC is a Georgia corporation with its principal executive offices located at 2999 Wildwood Parkway, Atlanta, Georgia 30339.  GPC is a service organization engaged in the distribution of automotive replacement parts, industrial parts and materials and business products.  GPC's common stock trades on the New York Stock Exchange under the ticker symbol "GPC."

38.     SPR, the Business Products Group of GPC, is a leading business products distributor throughout the U.S. and Canada.

39.     Sycamore is a private equity firm based in New York that specializes in retail and consumer investments.  Sycamore has approximately $10 billion in aggregate committed capital. Sycamore acquired Staples in June 2017 for approximately $6.9 billion.  As of September 14, 2018, Sycamore held 11.15% of Essendant's common stock.

40.     Staples is a Delaware corporation with its principal executive offices located at 500 Staples Drive, Framingham, Massachusetts 01701.  Staples, owned by Sycamore, is the world's largest office solutions provider.

41.     Egg Parent Inc. is a Delaware corporation and an affiliate of Staples.

42.     Egg Merger Sub Inc. is a Delaware corporation and a direct wholly owned subsidiary of Parent.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action individually on his own behalf and as a class action on behalf of all persons and entities who held shares of Essendant common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

45.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of September 5, 2018, there were 37,644,198 shares of Company common stock outstanding.  All members of the Class may be identified from records maintained by Essendant or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

46.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this action as a class action.

47.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether the Recommendation Statement contained any material misrepresentations or omitted any material information needed to make the recommendation Statement not misleading; and

(b)     Whether Plaintiff and the other members of the Class have been damaged and the proper measure of damages.

48.     Plaintiff's claims are typical of the claims of the Class because the harm suffered by Plaintiff and the other Class members was caused by the same false and misleading statements made by Defendants.  Plaintiff does not have interests antagonistic to or in conflict with the Class.

49.     Plaintiff is an adequate representative of the Class, has no interests adverse to the Class, is committed to fairly and adequately protecting the interests of the Class, and has retained competent counsel experienced in litigation of this nature.

50.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Essendant's Strong Future Prospects and the Flawed Process Leading to the Transaction

51.     Prior to the consummation of the Transaction, Essendant was a Delaware corporation that supplied workplace essentials.  The Company offered office and food service products, computer hardware, furniture, welding, safety, and janitorial and sanitation supplies.  Essendant served office furniture dealers, online retailers, janitorial and sanitation distributors, and omni-channel suppliers.

52.     While the Company had experienced less favorable financial results due to challenging industry conditions and a temporary decline in sales, its prospects for the future were strong.

53.     For example, on October 25, 2017, in connection with the announcement of the Company's third quarter 2017 financial results, Essendant announced the launch of three key strategic drivers to improve the Company's performance: (1) improving efficiency across the Company's distribution network and aligning its cost base, (2) driving sales performance in key growth channels, and (3) developing supplier partnerships that leverage the Company's network and capabilities.   The Company expected that, collectively, these initiatives would create annualized cost savings in excess of $50 million by 2020.

54.     The Company announced its fourth quarter and full year 2017 financial results on February 21, 2018, reflecting adjusted diluted income per share of $0.11, compared to adjusted diluted loss per share of $(0.02) in the fourth quarter of 2016.   Essendant also announced a restructuring program beginning in 2018 to advance its three strategic drivers, which would result in more than half of the $50 million savings target by 2020 being achieved in 2018.   On the February 22, 2018 earnings call, then-CEO defendant Phillips highlighted the Company's future outlook, stating:

> [ ] ***I want to reiterate the long-term potential I see in this business.***  We are a leading national distributor across a variety of product categories, serving a diverse group of reseller customers.   We provide access to a broad product portfolio, nationwide delivery and deep sales marketing and digital expertise.   We have a talented and dedicated associate team that is committed to our business, our customers and the communities in which we work and serve.   ***Executing on the three strategic drivers will accelerate our efforts to significantly improve the value of our business over the next two to three years.   I look forward to sharing our continued progress over the coming quarters.***[4]

---

[4] Q4 2017 Earnings Call at 3, Bloomberg (Feb. 22, 2018).

Emphasis added.

55.    On April 12, 2018, Essendant and GPC issued a joint press release announcing that they had entered into the GPC Merger Agreement to combine Essendant and GPC's office products subsidiary, SPR.  The press release stated:

> DEERFIELD, Ill. and ATLANTA, Ga., April 12, 2018 – Essendant (Nasdaq: ESND) and Genuine Parts Company (NYSE: GPC) today announced that the companies have entered into a definitive agreement to combine Essendant and Genuine Parts Company's S.P. Richards business. The transaction, which has been unanimously approved by the Boards of Essendant and Genuine Parts Company, is expected to be tax free to the companies' respective shareholders. Together, Essendant and S.P. Richards will form a stronger, more competitive business products distributor with greater scale and service capabilities and an enhanced ability to support customers.
>
> Bringing together leadership and operational expertise from Essendant and S.P. Richards and combining the best elements of each business' operations will create an even stronger company with the ability to harness each organization's unique strengths and capitalize on opportunities to create value, including:
>
> - Greater resources to support and partner with the independent dealer channel and resellers in other sales channels, and invest to drive enhanced value for customers, consumers and shareholders;
>
> - Optimized product assortment of branded and private-label products across a broad set of categories;
>
> - Enhanced capability to develop and offer innovative solutions to our customers, including value- added marketing and analytics to drive demand; and
>
> - Consolidated distribution network with greater efficiencies throughout the entire supply chain.
>
> Ric Phillips, Essendant President and Chief Executive Officer, who will lead the combined company, said, "By bringing together two businesses with long histories, complementary product lines and a shared customer-centric approach, we are creating a much stronger, better positioned company. Combining resources, leadership and operational expertise from both teams, and the unique strengths of both businesses will enhance our ability to compete and help our customers succeed in the face of a rapidly evolving market. In addition, through increased scale, improved service capabilities and an enhanced financial profile – including significant cost savings, increased free cash flow and a stronger balance

sheet – we will be able to drive more profitable growth and create meaningful value for shareholders."

Paul Donahue, Genuine Parts Company President and Chief Executive Officer, added, "This transaction is the result of a comprehensive process to maximize the value of S.P. Richards and represents a key step in the execution of Genuine Parts Company's long-term strategy by enabling us to increase our focus on our larger, core global automotive and industrial businesses. In addition, the merger provides substantial upside to Genuine Parts Company shareholders through the significant value proposition of the combined company that will be better equipped to succeed in a dynamic and changing marketplace. We have tremendous respect for Essendant and believe the combination with S.P. Richards' strong, diversified business and talented team will bring together two highly complementary cultures with a shared commitment to serving customers. For employees, the new company will have the scale and depth to compete more effectively, and we look forward to supporting the S.P. Richards and Essendant teams in facilitating a seamless integration."

**Value Creation for Both Companies' Shareholders**

The transaction creates a company with pro forma 2017 net sales of approximately $7 billion, $300 million in Adjusted EBITDA, 4.2% Adjusted EBITDA margins. The combined company will have a stronger and more flexible balance sheet, which will enable it to reduce leverage, invest in the business and provide value to shareholders.

In addition to creating a platform with greater scale and the enhanced ability to serve customers, the combination is expected to unlock more than $75 million in annual run-rate cost synergies and more than $100 million in working capital improvements. The cost synergies will primarily be driven by sourcing, supply chain and selling, general and administrative efficiencies. The combined company expects 90% of the cost synergies to be realized within two years post-closing and to incur less than $50 million in one-time cash costs to realize the synergies.

**Transaction Details**

The transaction combining Essendant and S.P. Richards is structured as a Reverse Morris Trust, in which Genuine Parts Company will separate S.P. Richards into a standalone company and spin off that standalone company to Genuine Parts Company shareholders, immediately followed by the merger of Essendant and the spun-off company. The transaction implies a valuation of S.P. Richards of approximately $680 million, reflecting the value of the Essendant shares to be issued at closing plus one-time cash payments to Genuine Parts Company of approximately $347 million, subject to adjustments at closing. Upon closing, Genuine Parts Company shareholders will own approximately 51% and Essendant shareholders will own approximately 49% of the combined company on a diluted

basis, with approximately 80 million diluted shares expected to be outstanding. The transaction is expected to be tax-free to Essendant and Genuine Parts Company shareholders.

The transaction is expected to close before the end of 2018, subject to regulatory and Essendant shareholder approvals and other customary closing conditions.

**Leadership and Governance**

Upon close of the transaction, the combined company, which will be called Essendant, will be led by Essendant President and CEO Ric Phillips, and Janet Zelenka will serve as CFO. S.P. Richards President and CEO Rick Toppin will be appointed Chief Operating Officer of the combined company. Additional leadership roles will be mutually determined as part of the integration process. Charles K. Crovitz, current Chairman of the Board of Essendant, will serve as Chairman of the Board of the combined company. He will be joined by three Essendant-appointed Directors, four Genuine Parts Company-appointed Directors, and four Directors appointed by mutual agreement.

The combined company will maintain headquarters in both Deerfield, IL and Atlanta, GA.[5]

56.     Unbeknownst to GPC, just days before Essendant executed the GPC Merger Agreement, Sycamore, on behalf of its portfolio company, Staples, called Essendant to express its interest in a potential transaction, and the Board was made aware of and considered the Sycamore inquiry.  Essendant did not alert GPC of this inquiry and Essendant had represented to GPC that it had no interest in any other merger partner other than GPC.

57.     Shortly thereafter, on April 17, 2018, Staples submitted an indication of interest to acquire 100% of the Company's equity for $11.50 per share.  The Board determined the proposal was not reasonably likely to lead to a Superior Proposal, as defined in the GPC Merger Agreement, however, the Board conveyed to Staples that Essendant would consider a revised offer from Staples, in breach of the no solicitation provision of the GPC Merger Agreement.

---

[5] Available at: https://www.sec.gov/Archives/edgar/data/355999/000119312518114855/d562536d425.htm

58.     Meanwhile, Essendant continued to make progress executing its restructuring program and strategic drivers.  For example, on April 25, 2018, the Company issued a press release announcing its first quarter 2018 financial results, which reflected an improved GAAP loss per share of $(1.40), compared to $(5.15) in the first quarter of 2017.  In the press release, defendant Phillips reiterated the Company's confidence in delivering more than half of the expected $50 million of cost savings in 2018.[6]  Similarly, on the April 26, 2018 earnings call, defendant Phillips commented on the Company's cost savings initiative, stating, "I'm excited about the progress we're making."[7]

59.     In the April 25, 2018 press release Defendant Phillips also highlighted the benefits the GPC Transaction would provide Essendant, noting, "[w]e're excited to accelerate our strategic drivers with the announced agreement to combine with S.P. Richards, which will form a stronger, more competitive national business products distributor."[8]

60.     Moreover, on the April 26, 2018 earnings call, defendant Phillips elaborated on the synergies Essendant expected to achieve in connection with the GPC Transaction:

> ***This transaction will accelerate our progress on the strategic drivers.***  We'll unlock more than $75 million in annual run rate cost synergies with over 90% delivered by the end of the second year, and more than $100 million in working capital improvements, creating a stronger and more flexible balance sheet.  We'll expand sales opportunities with our customers by providing them with several benefits including, first, greater resources to support and partner with the independent dealer channel and resellers and other sales channels, and to invest to drive enhanced value for customers.  Second, an optimized product assortment of branded and private label products across a broad set of categories.  Third, enhanced capabilities to develop and offer innovative solutions to our customers, including value-added marketing and analytics tools to help drive demand.  And fourth, a consolidated distribution network with greater efficiencies throughout

---

[6] Available at: https://www.sec.gov/Archives/edgar/data/355999/000156459018009056/esnd-ex991_10.htm
[7] Q1 2018 Earnings Call at 2, Bloomberg (April 26, 2018).
[8] *Id*.

the entire supply chain.  We also believe this combination will strengthen and help to sustain the independent dealer channel.

**We're excited about the benefits this will provide to all stakeholders, not just customers, but also suppliers, associates, and shareholders.**  As we move forward to complete this transaction before the end of 2018, including obtaining regulatory and shareholder approvals, we are acutely focused on continued execution of our strategic drivers.

\* \* \*

**Executing on the three strategic drivers, including our restructuring program and the announced combination with S.P. Richards, will significantly improve the value of our business.**  I look forward to sharing our continued progress over the coming quarters. [9]

Emphasis added.

61.     On April 29, 2018, Staples sent the Company a letter requesting the Company engage with Staples and indicating that Staples believed it would be able to "identify incremental opportunities which should enable [Staples] to increase [its] all-cash offer significantly in excess of $11.50 per share."[10]  The Board determined this second proposal was likely to lead to a Superior Proposal, although the proposed offer price was identical to the offer price in Staples' initial proposal.

62.     On May 7, 2018, in an effort to offer additional value to the Company's stockholders in the GPC Transaction, GPC sent the Company a term sheet proposing a CVR to the Company's stockholders that would have a maximum value of $4.00 per share.  This sweetener was rebuffed by Essendant to the detriment of its stockholders.

63.     On May 10 and May 15, 2018, Essendant and Staples exchanged a draft confidentiality agreement, which they later executed on August 3, 2018.

---

[9] *Id.* at 2-3.
[10] Available at: https://www.sec.gov/Archives/edgar/data/355999/000119312518165432/d527821dex994.htm

64.     Also on May 15, 2019, Sycamore, the owner of Staples, informed defendant Phillips that Staples would be filing a Schedule 13D to disclose a 9.9% beneficial ownership interest of the Company's outstanding shares.

65.     During a July 27, 2018 earnings call in connection with the Company's second quarter 2018 financial results, defendant Phillips reiterated the Company and the Board's confidence in the GPC Transaction, stating that the Company "expect[s] the [GPC Transaction] to close by the end of the year.  And our board of director's recommendation that shareholders vote in favor of the transaction remains in place."  Despite the developments that had occurred with Staples since Staples submitted its initial proposal on April 17, 2018, and without providing additional detail, defendant Phillips further stated that, "Staples has not entered into a confidentiality agreement with Essendant and we have not engaged in discussions with Staples regarding their proposal."[11]

66.     On the July 27, 2018 earnings call, defendant Phillips also elaborated on the success the Company was experiencing on executing its strategic drivers:

> [ ]Our first strategic driver includes a complete redesign of our inbound freight logistics, consolidation within our distribution network and operating cost reductions.
>
> Our inbound freight consolidation plan is expected to generate significant value in 2018 and beyond. With all four of our new inbound consolidation centers now open, we are focused on optimizing and improving center utilization adding support for new analytic processes and working with suppliers to improve overall efficiency across the supply chain.
>
> * * *
>
> In addition, we are realizing the benefits of our comprehensive plan to optimize costs and drive efficiencies.  Our reorganized and streamlined teams are maintaining a customer-centric approach and quickly implementing meaningful

---

[11] Q2 2018 Earnings Call at 3, Bloomberg (July 27, 2018).

process improvements.  We will continue to realize benefits through 2018 as they scale through the second half of the year.

Turning to our second driver, our efforts to accelerate growth across key sales channels and customers are also producing strong results. . . .

Overall, I am pleased with our efforts and the positive sales momentum we continue to generate.  To further drive that momentum, in the second quarter, we invested $19 million in the independent reseller channel, we believe in the value proposition that independent resellers provide to their customers and we have invested in the independent reseller channel in several ways over the years. . . .

* * *

As previously shared, we expect to realize over $50 million of annualized cost savings by 2020, with more than half of that realized in 2018, helping to offset the earnings impact of the year-over-year sales decline with national resellers.  We continue to progress on our strategic drivers and we expect to see the benefits including cost reductions and sales growth in key channels continue throughout the year.[12]

67.     On July 31, 2018, Staples sent a third letter reaffirming its second proposal for

$11.50 per share with the belief it would be able to identify incremental value opportunities that

would enable it to increase the offer price.

68.     On August 8, 2018, defendant Phillips sent a letter to the Company's employees

updating them on the progress of the GPC Transaction:

> ***Our proposed combination with S.P. Richards will further accelerate Essendant's progress on our strategic initiatives.*** As we continue to advance through the transaction approval process, I want to provide an update on the progress we have made so far and also provide an update on the unsolicited proposal from Staples.
>
> Today we finalized our Form S-4 with the Securities and Exchange Commission. We are now moving forward with notifying shareholders of the special meeting on October 5, 2018 to vote to approve issuing the stock needed for the merger with S.P. Richards. The Form S-4 provides information and background to shareholders on a range of topics before they vote. At the same time, we are working with the Federal Trade Commission (FTC) to comply with their

---

[12] *Id.* at 2.

information request regarding the merger with S.P. Richards, and *we continue to plan for the transaction to close by the end of the year.*

\* \* \*

As most of you are aware, Staples has made an unsolicited offer to acquire Essendant, which was reiterated in a letter issued in a public filing by Staples last week. Our Board has a fiduciary duty to our shareholders to evaluate proposals like the one we received from Staples, and on August 3 we entered into a confidentiality agreement with Staples which enables us to begin discussions. *However, it's important to note that the S.P. Richards merger agreement remains in effect, and the Board has not changed its recommendation that Essendant's shareholders vote in favor of that transaction.*[13]

69.    On August 13, 2018, the Company commenced mailing the GPC Proxy to the Company's stockholders for a stockholder vote to be held on October 5, 2018.

70.    Also on August 13, 2018, Staples sent the Company a letter asserting Staples' proposal was superior to the proposed GPC Transaction.

71.    That same day, Essendant issued a comment in response to Staples' letter, touting the benefits the GPC Transaction would provide Essendant.  The press release stated, in pertinent part:

Essendant's second quarter performance demonstrates that the company's actions to evolve its business and support customers in the face of a rapidly changing landscape are producing results. *The Essendant Board and management team are confident that bringing together the complementary strengths of Essendant and S.P. Richards will accelerate those efforts by creating a combined company with greater scale, expanded service capabilities and an enhanced ability to help customers compete while delivering compelling value to stockholders. The combined Essendant and S.P. Richards will be a fundamentally stronger company* with increased free cash flow, higher margins and a stronger balance sheet as well as the opportunity to benefit from the ability to unlock more than $75 million in annual run-rate cost synergies through sourcing, supply chain and selling, general and administrative efficiencies and over $100 million in working capital improvements.[14]

---

[13] Available at: https://www.sec.gov/Archives/edgar/data/355999/000119312518241341/d569736d425.htm
[14] Available at: https://www.sec.gov/Archives/edgar/data/355999/000119312518247412/d583846d425.htm

Emphasis added.

72.     On September 4, 2018, Staples sent a letter to Essendant expressing its belief that the GPC Transaction faced significant regulatory concerns, that the Company's stock price was inflated on takeover speculation, and that it was prepared to engage regarding an increase to the $11.50 per share price.  That same day, Staples, which then owned approximately 11% of the Company's outstanding shares, filed materials with the SEC indicating its intent to solicit proxies in opposition to the GPC Transaction-related stockholder proposals at the Company's upcoming October 5, 2018 stockholder meeting.

73.     On September 5, 2018, Essendant acknowledged receipt of Staples' September 4 letter, emphasizing that the Board continued to recommend that Company stockholders vote in favor of the GPC Transaction:

> The merger agreement with GPC remains in effect, and the Essendant Board has not changed its recommendation that Essendant's shareholders vote in favor of that transaction.
>
> Essendant remains committed to implementing its strategic initiatives as it evolves its business, supports its customers and builds on the momentum reflected in the Company's improved financial results for the second quarter of 2018.[15]

74.     On September 7, 2018, GPC sent the Company a letter expressing its concern over a number of matters, including that the Company had not informed GPC that Sycamore had called defendant Phillips prior to the signing of the GPC Merger Agreement, that the Company had decided to engage in discussions with Staples, that the Company had declined to pursue the CVR proposed by GPC, that in GPC's opinion the confidentiality agreement with Staples did not qualify as an "Acceptable Confidentiality Agreement" under the GPC Merger Agreement and

---

[15] Available at: https://www.sec.gov/Archives/edgar/data/355999/000119312518267323/d613686d425.htm

that the Company had not made timely and meaningful outreach to its customers to obtain affidavits and other statements in support of the GPC Transaction in connection with the regulatory approval process.

75.    On September 8, 2018, Staples' financial advisor indicated to Essendant that it believed Staples would be willing to agree to a $12.80 per share price, subject to resolving the remaining terms of the transaction.

76.    On September 9, 2018, just four days after the Company reassured its stockholders that the Board continued to recommend the GPC Transaction, the Board met and determined the $12.80 per share Staples offer was a "Superior Proposal" under the GPC Merger Agreement.  On September 10, 2018, the Company notified GPC.  Later that day, GPC, which had previously indicated its belief that a Staples acquisition of the Company for $12.80 per share would not be superior to a merger with GPC, issued a press release announcing it would not be making any counterproposals.

77.    On September 10, 11 and 12, 2018, representatives of Pzena, the Company's largest stockholder, also expressed its dissatisfaction with Staples' proposal and informed Company representatives they did not think Staples' $12.80 per share offer was a "Superior Proposal" and that they believed the Company's stand-alone value was in excess of the Offer Price.  On September 13, 2018, Pzena issued a press release stating it did not intend to support the Transaction.

78.    Also on September 13, 2018, the Board met and determined Staples' $12.80 per share proposal was a "Superior Proposal" under the GPC Merger Agreement and that terminating the GPC Merger Agreement and entering into the Merger Agreement with Staples were in the best interests of the Company and its stockholders.  Following the meeting, the

Company delivered notice to GPC that it was terminating the GPC Merger Agreement and the parties executed the Merger Agreement.

79.    On September 14, 2018, Essendant issued a press release announcing the Transaction. The press release stated, in relevant part:

> FRAMINGHAM, Mass. and DEERFIELD, Ill., Sept. 14, 2018 -- Staples, Inc. and Essendant Inc. (NASDAQ: ESND) today announced that they have entered into a definitive agreement under which an affiliate of Staples, the world's largest office solutions provider, will acquire all of the outstanding shares of Essendant common stock for $12.80 per share in cash, or a transaction value of $996 million including net debt.
>
> The transaction follows the determination by Essendant's Board of Directors, after consultation with Essendant's legal and financial advisors, that the Staples proposal constituted a "Superior Proposal" as defined in Essendant's previously announced merger agreement to combine with Genuine Parts Company's (NYSE: GPC) ("GPC") S.P. Richards business (the "S.P. Richards agreement"). Consistent with that determination, and following the expiration of the three-day waiting period during which GPC did not propose any amendments to the S.P. Richards agreement, Essendant terminated that agreement. In connection with the termination, GPC is entitled to a $12 million break-up fee, which Staples is paying as part of its agreement with Essendant.
>
> "We are excited about the opportunity to move forward with this agreement, and to work with the Essendant team to complete the partnership of these two great companies, which will ultimately deliver significant value to independent resellers and end customers across the U.S.," Staples said.
>
> "After carefully evaluating Staples' revised offer, including taking into account the extended regulatory process and risks associated with the S.P. Richards transaction and the continued challenges presented by the rapidly changing industry dynamics on our ability to realize value in combination with S.P. Richards, we are confident that the Staples transaction is in the best interest of Essendant shareholders," said Charles Crovitz, Chairman of Essendant. "While our agreement to merge with S.P. Richards presented an attractive opportunity, we believe the Staples transaction provides superior and immediate value to our shareholders."
>
> Ric Phillips, President and Chief Executive Officer of Essendant added, "We believe combining with Staples provides a tremendous opportunity to enhance our resources and ability to serve customers, while delivering compelling and certain value to shareholders. I want to thank all our associates for their continued commitment and dedication as we have navigated this process over the past

several months."

**Transaction Terms**

The $12.80 per share purchase price reflects a 51% premium to Essendant's share price on April 11, 2018, the day before the company announced plans to merge with GPC's S.P. Richards business, and a 10.3x multiple of last-twelve-months Adjusted EBITDA.

The transaction will be implemented through a cash tender offer at $12.80 per share. The transaction is conditioned upon, among other things, the number of Essendant shares included in the tender offer, together with the 11.15% of Essendant's outstanding common shares currently owned by Staples and its affiliates, representing more than 50% of Essendant's outstanding common shares, expiration of all applicable waiting periods under the Hart-Scott-Rodino (HSR) Antitrust Improvements Act of 1976, and other customary closing conditions. If the tender offer is consummated, the tender offer will be followed by a merger in which any shares of Essendant common stock not purchased in the offer will be converted into the right to receive the same $12.80 per share in cash. The transaction is not subject to a financing condition and is expected to close in the fourth quarter.[16]

80.     On September 17, 2018, Pzena filed a Schedule 13D with the SEC indicating its belief that the Staples proposal was not a "Superior Proposal."  On October 4, 2018, Pzena filed a Schedule 14D-9 with the SEC, recommending that Essendant stockholders not tender their shares in connection with the Transaction.

**The Materially False or Misleading Statements in the Recommendation Statement**

81.     On September 24, 2018, Essendant filed the Recommendation Statement and mailed it to Essendant stockholders.  The Recommendation Statement misrepresented or omitted material information that was necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Tender Offer or seek appraisal.

82.     As set forth above, the Recommendation Statement contained five categories of materially misleading statements.

---

[16] Available at: https://www.sec.gov/Archives/edgar/data/355999/000119312518274013/d624460dex991.htm

83. **First**, the Recommendation Statement misled Essendant stockholders with respect to the Board's conclusion that the Transaction was more favorable from a financial point of view to the Company's stockholders than the GPC Transaction. The Recommendation Statement set forth:

> In the afternoon of September 9, 2018, the Company Board met with members of management and representatives of Skadden and Citi to discuss the Staples offer. . . . . *The Company Board and management discussed certain changes that had occurred in the Company's business since the transaction with GPC was announced, such as current and possible future dealer consolidation and the impact of these changes on the previously anticipated benefits of the GPC transaction*. . . . A representative of Skadden then discussed the requirements under the GPC Merger Agreement for determining whether the Staples proposal was a "Superior Proposal," notifying GPC of this determination and terminating the GPC Merger Agreement to accept the offer from Staples. He explained that, *under the GPC Merger Agreement, a "Superior Proposal" needed to be both more favorable from a financial point of view to the Company stockholders than the transaction with GPC* and reasonably expected to be consummated. . . . *The consensus of the Company Board was that, based on the information then available and subject to Staples making a binding offer that included a fully negotiated merger agreement executed by Staples, the Staples proposal constituted a "Superior Proposal" in accordance with the provisions of the GPC Merger Agreement*.

Recommendation Statement at 25 (emphasis added).

84. As set forth above, the Company consistently touted the benefits of the GPC Transaction and never communicated any changes to the anticipated benefits of the GPC Transaction that would support the Transaction being more favorable from a financial point of view to Essendant's stockholders than the GPC Transaction and justify the Board's decision to deem Staples' binding offer a Superior Proposal.

85. Tellingly, the Recommendation Statement failed to disclose any details of changes that had occurred in the Company's business since the GPC Transaction was announced, such as current and possible future dealer consolidation and quantification of the impact of these changes on the previously anticipated benefits of the GPC Transaction. As such, the

Recommendation Statement misled Essendant stockholders into believing that the benefits of the GPC Transaction had deteriorated in order to coerce Essendant's stockholders to support the Transaction.

86.     In fact, the GPC Transaction was more favorable from a financial point of view to Essendant's stockholders than the Transaction as shown by Citi's Pro Forma DCF in connection with the GPC Transaction, resulting in an approximate implied equity value reference range for the pro forma combined company of $13.30 to $23.90 per share (including a synergies range of approximately $8.35 to $11.25 per share based on the midpoint range of the estimated present values of the synergies).  GPC Proxy at 88.  The implied equity value reference range for the pro forma combined company of ***$13.30 to $23.90***, **was** ***$0.50 to $11.10 above the Offer Price***.

87.     In fact, the Recommendation Statement fails to point to any evidence that the Offer Price was more favorable from a financial point of view to the Company stockholders than the GPC Transaction.

88.     **Second**, the statements in the Recommendation Statement that convey the message that the Board determined "the Staples offer was a 'Superior Proposal' . . . after taking into account all legal, financial, **regulatory** and other aspects of the offer . . ." (Recommendation Statement at 27) (emphasis added), including "the Company Board's assessment that no such alternatives (including the SPR Acquisition) were reasonably likely to create greater value to the Company's stockholders, taking into account risks of execution (including in the case of the SPR Acquisition, the **extended regulatory review process and regulatory risks related to that transaction** . . ." (*Id.*) (emphasis added) misled Essendant stockholders into thinking the Transaction was superior to the GPC Transaction because of regulatory risk specific to the GPC Transaction.

89.     These statements, designed to coerce Essendant stockholders into supporting the Transaction were further belied by Essendant's previous representations to GPC regarding the likelihood of antitrust approval.  *See* GPC Complaint ¶44.  Yet, the Recommendation Statement failed to disclose any details regarding what changed between the progress Essendant was making with the FTC on the GPC Transaction and when Essendant attributed regulatory risk as a basis for the Board's determination that the Transaction was a "Superior Proposal," including: (i) an update on the FTC's review of the GPC Transaction, including the FTC's general description of the reactions from many customers of the Company and GPC regarding the proposed GPC Transaction; and (ii) the likelihood of FTC clearance of the GPC Transaction.

90.     According to the Recommendation Statement, GPC and the Company had already made significant progress towards obtaining regulatory approval.  For example, at the September 4, 2018 Board meeting:

> [A] representative of Skadden provided a regulatory update on the FTC's reviews of the SPR Acquisition and the proposed acquisition by Staples. He reviewed the analysis provided at the time the GPC Merger Agreement was entered into in April 2018 and ***outlined developments occurring since then, including the review of hundreds of thousands of the Company documents responsive to the FTC's requirements for document production and the FTC's general description of the reactions from many customers of the Company and GPC regarding the proposed GPC transaction. He also assessed the likelihood of FTC clearance of the GPC transaction and the Staples proposal based in part on conversations with the FTC, conversations with representatives of GPC and Staples, and review and analysis of the Company's documents and data***.

*Id*. at 23 (emphasis added).  Thereafter, at the September 8, 2018 Board meeting:

> [t]he representative of Skadden informed the Company Board that the FTC was in the process of reviewing a large number of documents that had been made available to it and was dedicating substantial time and resources to its review of the GPC transaction.  He ***described the content of many of the Company's documents and their likely effect on the FTC's review of the GPC transaction, and assessed the review process, and risks to, and likelihood of, obtaining FTC clearance of the SPR Acquisition***."

*Id*. at 24 (emphasis added).

91.     Indeed, during Essendant's July 27, 2018 second quarter 2018 earnings call, Essendant assured stockholders the Company was confident the GPC Transaction would obtain FTC clearance.  During the call defendant Phillips stated:

> I'd like to share some updates on our merger with S.P. Richards.  As you may have seen, last week, we filed an amended S-4 with the [SEC] in connection with our proposed merger with GPC's S.P. Richards business.  We are working with the SEC to finalize the S-4. . . .  We are also working to comply with the Federal Trade Commission's request for additional information.  We continue to expect the transaction to close by the end of the year.[17]

92.     Critically, although the Recommendation Statement set forth that the Board made its determination the Staples transaction was a "Superior Proposal" based on regulatory concerns (*id.*), the Recommendation Statement failed to disclose any information supporting specific regulatory risks that made the Transaction more favorable to Essendant stockholders than the GPC Transaction.  Instead, the Recommendation Statement set forth the following generalized reason the Board believed that the Offer Price was more favorable to the Company's stockholders than the likely value that would result from other potential transactions involving the Company, including the GPC Transaction:

> the possible alternatives to a sale of the Company, including continuing to pursue the SPR Acquisition or remaining an independent public company, as well as the potential benefits, risks and uncertainties associated with such alternatives and the Company Board's assessment that no such alternatives (including the SPR Acquisition) were reasonably likely to create greater value to the Company's stockholders, ***taking into account risks of execution (including in the case of the SPR Acquisition, the extended regulatory review process and regulatory risks related to that transaction*** and uncertainties in realizing potential synergies from the transaction given market changes), as well as business, competitive, industry and market risks. In determining that the Staples offer was a "Superior Proposal" under the GPC Merger Agreement to the SPR Acquisition, the Company Board determined, after taking into account all legal, financial, regulatory and other aspects of the offer, including the availability of financing, that the Staples offer

---

[17] Q2 2018 Earnings Call at 3, Bloomberg (July 27, 2018).

> was (1) more favorable, from a financial point of view, to the stockholders of the
> Company than the SPR Acquisition and (2) reasonably expected to be
> consummated

*Id*. at 27. The Recommendation Statement failed to disclose, however, any specific regulatory

risks that made the Transaction more favorable to Essendant stockholders than the GPC

Transaction.

93. **Third**, the Recommendation Statement was false or misleading with respect to

the material factors the Board believed supported its determination to recommend the

Transaction, including:

> *Loss of Opportunity*. The Company Board considered the possibility that, if it
> declined to adopt the Merger Agreement, ***there might not be another opportunity***
> ***for the Company's stockholders to benefit from a comparably priced sale***
> ***transaction involving the Company*** and that the market price for the Shares could
> fall, including possibly materially, below the Offer Price.

*Id.* at 28. Emphasis added. This statement was false and misleading as the GPC Transaction was

an "opportunity for the Company's stockholders to benefit from a comparably priced sale

transaction." As set forth above, the GPC Transaction was financially superior to the

Transaction as evidenced by Citi's Pro Forma DCF resulting in an implied equity value reference

range for the pro forma combined company of ***$13.30 to $23.90*** - **$0.50 to $11.10 above the**

**Offer Price**. *See infra* "Essendant Stockholders Were Harmed as a Result of Defendants'

Misconduct."

94. **Fourth,** the Recommendation Statement disclosed certain information regarding

the process leading to the Transaction, but failed to disclose other troubling material information

regarding the Board's behavior during the process. Specifically, the Recommendation Statement

failed to disclose:

- that Essendant represented to GPC that "it had no interest in any merger partner other than GPC."[18]

- that on or about April 27, 2018, when the Individual Defendants informed Staples that they did not believe that Staples' April 17, 2018 Proposal was reasonably likely to lead to a superior acquisition proposal, that the Individual Defendants also communicated to Staples that it would be open to receiving a revised offer from Staples.[19]

- that Essendant did not contact its customers to build customer support for the GPC Merger even though such customer outreach was a factor that GPC and Essendant had determined would be critical to the antitrust authorities' evaluation of the GPC Transaction, GPC had repeatedly asked Essendant to conduct such outreach and Essendant repeatedly assured GPC that it would do so.[20]

95.     Each of the above omitted material facts points to the Board's role in undermining the GPC Transaction in order to enter into their preferred and non-value maximizing transaction with Staples.

96.     **Fifth**, the Recommendation Statement misled Essendant stockholders as to the potential conflicts of interest faced by Essendant senior management and the Board.  The amended Schedule 14D-9 Essendant filed with the SEC on November 21, 2018 emphasized that "[n]o discussions or negotiations regarding post-closing employment or directorship with, or the purchase of or participation in the equity of, the Surviving Corporation occurred between Staples and any Company executive officers or directors prior to the approval and execution of the

---

[18] GPC Compl., ¶ 3; *see also* GPC Compl., ¶¶ 1, 17, 28.
[19] GPC Compl., ¶ 6.
[20] GPC Compl., ¶¶ 27, 42-44.

Merger Agreement."[21]   This was misleading as regardless of whether there had been formal discussions or negotiations, it was always clear that Staples' intent had been for Essendant to be run independently after it was acquired.   In an interview with Office Products International ("OPI"), Douglas told OPI "'[w]e want dealers to know that we fully intend for Essendant to operate independently and that there will be no interaction between Staples' commercial operations and Essendant's commercial operations,'. . . saying there would be a firewall put in place which guaranteed the security of dealers' data."[22]   Douglas further indicated that "Staples would allow the Essendant leadership team [to] run the wholesaler 'for the betterment of dealers.'"   *Id.*   While these communications were after the close of the Transaction, the strategy of operating Essendant independently and putting a firewall in place in order to gain FTC clearance had to have been discussed with Essendant management and the Board prior to the execution of the Merger Agreement.   Indeed, [t]he Company and its representatives spoke frequently . . .  with FTC staff and with representatives of Staples regarding the FTC's review of the Staples transaction."   Recommendation Statement at 22.

**Essendant Stockholders Were Harmed as a Result of Defendants' Misconduct**

97.     Plaintiff and the rest of the Class members were harmed as a result of approving the Transaction in reliance upon the materially misleading and deficient Recommendation Statement.   Indeed, Defendants disseminated the Recommendation Statement as a means of depriving Essendant stockholders of the true nature of the Company's intrinsic value and the potential value of the Company under the GPC Transaction, inducing the Company's

---

[21] Available at: https://www.sec.gov/Archives/edgar/data/355999/000119312518332002/d635377dsc14d9a.htm
[22] *Essendant will remain independent, says Staples CEO*, Office Furniture Dealers Alliance (Sept. 26, 2018), *available at* https://www.opi.net/news/region/001-north-america/exclusive-essendant-will-remain-independent-says-staples-ceo/.

stockholders into accepting the Offer Price that was unfair compared to the actual intrinsic value of the Company and not more favorable from a financial point of view to the Company's stockholders than the GPC Transaction.

98.     Essendant insiders conspired with Sycamore and engineered the Transaction with Staples as part of a self-interested plan to maximize their lucrative change-in-control benefits.  In addition to achieving liquidity for their Essendant shares collectively valued at approximately $2.75 million (*see* Recommendation Statement at 5), Essendant's directors and officers received millions of dollars in special payments – not being made to ordinary stockholders – for currently unvested cash-based awards, performance units, and restricted shares, all of which became fully vested and exercisable upon the Transaction's closing.  Critically, via the Transaction, Essendant insiders secured significantly higher payments than the payments they would have received under the GPC Transaction.  Indeed, Essendant's named executive officers collectively increased their "golden parachutes" by **$5.6 million** compared to the benefits they were entitled to receive in the GPC Transaction, as set forth in the following table:

| Name | | GPC Transaction[23] | Staples Transaction[24] | *Change* |
|---|---|---|---|---|
| Richard D. Phillips | Cash | $7,716,291 | $8,467,284 | *$750,993* |
| | Equity | $5,357,054 | $7,553,856 | *$2,196,802* |
| | Perquisites/ Benefits | $141,581 | $85,202 | *($56,379)* |
| | **Total** | **$13,214,926** | **$16,106,342** | ***$2,891,416*** |
| Janet H. Zelenka | Cash | $2,752,099 | $2,820,482 | *$68,383* |
| | Equity | $1,515,684 | $2,282,624 | *$766,940* |
| | Perquisites/ Benefits | $91,997 | $48,153 | *($43,844)* |
| | **Total** | **$4,359,780** | **$5,151,259** | ***$791,479*** |
| Keith J. Dougherty | Cash | $3,065,599 | $3,129,041 | *$63,442* |
| | Equity | $1,027,253 | $1,486,976 | *$459,723* |
| | Perquisites/ Benefits | $106,144 | $51,418 | *($54,726)* |

---

[23] *See* GPC Proxy at 100.
[24] *See* Recommendation Statement at 42.

|  |  | Total | $4,198,996 | $4,667,435 | *$468,439* |
| Harry A. Dochelli | | Cash | $3,305,599 | $3,929,041 | *$623,442* |
|  |  | Equity | $984,469 | $1,462,758 | *$478,289* |
|  |  | Perquisites/ Benefits | $110,021 | $52,313 | *($57,708)* |
|  |  | **Total** | **$4,400,089** | **$5,444,112** | ***$1,044,023*** |
| Carole W. Tomko | | Cash | $2,233,495 | $2,282,691 | *$49,196* |
|  |  | Equity | $881,609 | $1,300,992 | *$419,383* |
|  |  | Perquisites/ Benefits | $106,144 | $51,418 | *($54,726)* |
|  |  | **Total** | **$3,221,248** | **$3,635,101** | ***$413,853*** |
| **GRAND TOTAL** | | | **$29,395,039** | **$35,004,249** | ***$5,609,210*** |

99.     The Transaction also appeared to be timed to take advantage of a temporary decrease in revenue in the Company's business, as it had recently been successfully executing a strategic plan to accelerate sales growth and implement cost savings.  During Essendant's July 27, 2018 second quarter 2018 earnings call, defendant Phillips stated:

> Our restructuring program is on target with expectations.  A cross-functional team skillfully drove the program to allow us to capture the cost reductions associated with our strategic drivers to improve organizational alignment around our growth channels and to provide the product assortment capacity to invest in additional products with our key suppliers over time.
>
> As previously shared, we expect to realize over $50 million of annualized cost savings by 2020, with more than half of that realized in 2018 . . . .  We continue to progress on our strategic drivers and we expect to see the benefits including cost reductions and sales growth in key channels continue throughout the year.[25]

100.    The Offer Price of $12.80 per share is also unfair, as the Board failed to obtain maximum value and adequately compensate shareholders.  For example, on September 9, 2018, the day the Board determined that Staples' $12.80 proposal would constitute a "Superior Proposal," the Offer Price represented an 11.3% discount to Essendant's closing stock price of $14.25 on September 7, 2018, the last day of trading.

---

[25] Q2 2018 Earnings Call at 2, Bloomberg (July 27, 2018).

101.    Indeed, following the April 12, 2018 announcement of the GPC Transaction, Essendant shares traded well above the $12.80 per share Offer Price, trading as high as $17.08 on July 30, 2018, $4.28 above the Offer Price.

102.    Further, the Company's own financial advisor, Citi, valued the consideration Essendant stockholders would have received in the GPC Transaction significantly above the Offer Price as shown in Citi's Pro Forma DCF resulting in "an approximate implied equity value reference range for the pro forma combined company of **$13.30 to $23.90** per share (including a synergies range of approximately $8.35 to $11.25 per share based on the midpoint range of the estimated present values of the synergies)" (GPC Proxy at 88) (emphasis added) - **$0.50 to $11.10 above the Offer Price.**

103.    GPC and certain Essendant stockholders have outright criticized the Transaction, expressing that the $12.80 Offer Price did not constitute a "Superior Proposal."

104.    For example, on September 10, 2018, following notice of the Board's determination that Staples' offer constituted a "Superior Proposal," GPC issued a press release indicating "GPC continues to believe the [GPC] Merger Agreement represents a superior proposal and will not make any counterproposals."

105.    Shortly thereafter, on September 12, 2018, Essendant's largest shareholder Pzena issued a statement indicating that Pzena "believes that the proposal from Staples to acquire Essendant at $12.80 a share does not constitute a superior offer to the proposed merger with SP Richards, nor does the offer of $12.80 adequately value the company independent of the SP Richards transaction."[26]   A September 14, 2018 *Barron's* article quoted Pzena portfolio manager

---

[26] *Pzena Investment Management Opposes Staples's Acquisition of Essendant* (Sept. 12, 2018), *available at* https://www.globenewswire.com/news-release/2018/09/12/1570149/0/en/Pzena-Investment-Management-Opposes-Staples-s-Acquisition-of-Essendant.html

John Flynn as stating: "Our view is that the company is worth significantly more than $12.80 a share, either combined with S.P. Richards or as a stand-alone company. This deal with Staples is not something that shareholders should support, and it undervalues the company."[27]

106.   Then, on September 17, 2018, Pzena filed a Schedule 13D with the SEC, indicating:

> As [Essendant's] largest shareholder, [Pzena] believes that the proposal from Staples to acquire the Company at $12.80 per share does not constitute a superior offer to the proposed merger with SP Richards, a subsidiary of Genuine Parts Company (NYSE: GPC), nor does the offer of $12.80 per share adequately value the Company independent of the SP Richards transaction. For that reason, [Pzena] does not intend to support the proposed acquisition by Staples.[28]

107.   On October 4, 2018, Pzena filed a Schedule 14D-9 with the SEC, recommending that Essendant stockholders *not* tender their shares in connection with the Tender Offer.  In its filing, Pzena stated:

> [Pzena] believes that the proposal does not constitute a superior offer to the proposed merger with SP Richards, a subsidiary of Genuine Parts Company (NYSE: GPC), nor does the offer of $12.80 per share adequately value the Company independent of the SP Richards transactions. Staples and Sycamore Partners have pressured the Company's Board of Directors to accept an offer materially below intrinsic value and the recent trading history of the Company Common Stock.
>
> The tender offer from Staples at $12.80 per share significantly undervalues the company.  The Company has been working to offset recent revenue declines, and as a result current margins are depressed and significantly below historical levels. Management noted in the 2Q18 earnings call on July 27th significant progress in driving sales growth and implementing cost savings initiatives.  We believe there is significant upside to the stock price as management executes against the strategic plan that is not reflected in the $12.80 tender offer, which is only slightly above book value and significantly below the Company's own recent trading history.

---

[27] Andrew Bary, *Staples' Bid to Buy Essendant Faces a Fight*, Barron's (Sept. 14, 2018), *available at* https://www.barrons.com/articles/staples-bid-to-buy-essendant-faces-opposition-1536953266

[28] Available at: https://www.sec.gov/Archives/edgar/data/355999/000156459018023167/pzn-sc13d.htm

Furthermore, we believe the board of directors walked away from a far superior and compelling opportunity to merge with SP Richards.[29]

108.   Moreover, the Transaction provided outsized benefits to Staples.  For example, the deal advances Staples' strategy of further penetrating the business-to-business ("B2B") market rather than direct-to-consumer sales, amid competition by rivals Office Depot and Amazon.  According to a September 19, 2018 *Retail TouchPoints* article:

> Before its acquisition by Sycamore in September 2017, Staples reported $10.1 billion in annual sales at its North American Delivery unit, which is comprised of B2B operations including StaplesAdvantage.com and Quill.com, as well as the Staples.com site.  Essendant gives Staples an extra $5 billion in annual sales, as well as a network of distribution centers that will enables the company to ship most products overnight to more than 90% of the U.S.[30]

## LOSS CAUSATION

109.   The false and misleading Recommendation Statement was an essential link in connection with the Tender Offer and Transaction, and in proximately causing damages to Class members.  Defendants' misrepresentations and omissions regarding (i) the Board's conclusion that the Transaction was more favorable from a financial point of view to the Company stockholders than the GPC Transaction; (ii) the Board's determination that the Transaction was superior to the GPC Transaction because of regulatory risk specific to the GPC Transaction; (iii) the material factors the Board believed supported its determination to recommend the Transaction; (iv) certain troubling material information regarding the Board's behavior during the process; and (v) potential conflicts of interest faced by Essendant senior management and the Board, caused Plaintiff and members of the Class to accept the Offer Price that failed to

---

[29] Available at: https://www.sec.gov/Archives/edgar/data/355999/000095012318009668/pzn-sc14d9.htm

[30] *Staples Acquires Essendant for$996M As Retailer Seeks Wholesale Revival* (Sept. 19, 2018), *available at* https://www.retailtouchpoints.com/features/mergers-and-acquisitions/staples-acquires-essendant-for-996m-as-retailer-seeks-wholesale-revival

adequately value Essendant's shares and was less favorable from a financial point of view than the consideration offered in connection with the GPC Transaction. As a result, Plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

## CLAIMS FOR RELIEF

### COUNT I

**Violations of Section 14(e) of the Exchange Act**
**(Against the Individual Defendants and Essendant)**

110.    Plaintiff repeats and realleges each allegation as if fully set forth herein.

111.    Section 14(e) of the Exchange Act, provides:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

112.    The Individual Defendants and Essendant prepared, reviewed, and/or disseminated the false and misleading Recommendation Statement which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

113.    As stated herein, the Recommendation Statement contained untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of §14(e) of the Exchange Act. The Individual Defendants and Essendant failed to correct the Recommendation Statement and failed to update and correct the false statements. The omissions and false and misleading statements in the Recommendation Statement were material in that a reasonable stockholder would have considered them important

in deciding whether to tender their shares in support of the Transaction or seek appraisal. In addition, a reasonable investor would view a full and accurate disclosure as having significantly altered the "total mix" of information made available in the Recommendation Statement and in other information reasonably available to stockholders.

114.    The Recommendation Statement was an essential link in the consummation of the Transaction. As a direct result of Defendants' preparation, review, and dissemination of the false and/or misleading Recommendation Statement, Plaintiff and the class were induced to tender their shares and accept inadequate consideration in connection with the Transaction. The false and/or misleading Recommendation Statement used to obtain stockholder approval of the Transaction deprived Plaintiff and the class of their right to make a decision on the Tender Offer based on adequate information.

115.    The Individual Defendants and Essendant acted negligently and also with scienter. As discussed in detail above, at all times relevant to the dissemination of the materially false and/or misleading Recommendation Statement, Defendants were aware of and/or had access to the true facts concerning the GPC Transaction and its superiority to the Transaction. Thus, as a direct and proximate result of the dissemination of the false and/or misleading Recommendation Statement Defendants used to obtain stockholder approval of and thereby consummate the Transaction, Plaintiff and the Class have suffered damage and actual economic losses in an amount to be determined at trial.

116.    By reason of the misconduct detailed herein, the Defendants are liable pursuant to §14(e) of the Exchange Act.

## COUNT II

**Violation of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

117.    Plaintiff repeats and realleges each allegation set forth herein.

118.    The Individual Defendants acted as controlling persons of Essendant within the meaning of Section 20(a) of the Exchange Act.

119.    By virtue of their positions as officers or directors of Essendant and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

120.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

121.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Transaction.

122.    By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment, in Plaintiff's favor and in favor of the Class and against Defendants, as follows:

A.      Declaring that this action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as Class representative and Plaintiff's counsel as Class counsel;

B.      Declaring that Defendants violated the federal securities laws as alleged herein by disseminating the Recommendation Statement in connection with the Transaction, which contains materially false and misleading statements;

C.      Awarding Plaintiff and the Class damages;

D.      Awarding Plaintiff and the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees and other costs; and

E.      Granting such other and further relief as this Court may deem just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.



Dated:  September 20, 2019                          **O'KELLY ERNST & JOYCE, LLC**

                                         By   */s/ Ryan M. Ernst*
                                              Ryan M. Ernst (#4788)
                                              901 N. Market St., Suite 1000
                                              Wilmington, DE 19801
                                              Tel.: (302) 778-4000
                                              Email: rernst@oelegal.com

**OF COUNSEL:**                               *Attorneys for Plaintiff*

**WEISSLAW LLP**
Richard A. Acocelli

Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*